UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| GRINNELL MUTUAL REINSURANCE COMPANY, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 4:21-cv-00118-JMS-DML |
| | ) | |
| JOSEPH LONG, | ) | |
| H. L., *a minor*, and | ) | |
| ALVA GEISLER, | ) | |
| | ) | |
| *Defendants*. | ) | |

## ORDER

Plaintiff Grinnell Mutual Reinsurance Company ("Grinnell") seeks a declaration that it has no duty to defend or indemnify Defendant Alva Geisler for liability that he may have in connection with an incident in which Defendants Joseph Long and H. L., a minor, were injured. [Filing No. 18.] Grinnell has filed a Motion for Summary Judgment. [Filing No. 37.] While Mr. Long and H.L. responded to Grinnell's Motion, Alva Geisler did not and the time to do so has now passed. For the reasons discussed below, Grinnell's Motion for Summary Judgment is denied.

**I.**
**STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). "'Summary judgment is not a time to be coy.'" *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (quoting *Sommerfield v. City of*

1

*Chicago*, 863 F.3d 645, 649 (7th Cir. 2017)).  Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table." *Sommerfield*, 863 F.3d at 649.

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence."  S.D. Ind. L.R. 56-1(e).  And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence."  *Id.*  The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant.  *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h).  Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion.  Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those

facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standards detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

**A. The Geisler Family and the Geisler Farm**

This case concerns insurance coverage on an approximately sixty-acre property located at 10272 South County Road 275 West, Madison, Indiana ("the Geisler Farm"). [Filing No. 43-2 at 12.] While members of the Geisler family have owned the Geisler Farm for "four or five generations," ownership of the Geisler Farm has changed hands between the various members of the Geisler family at different points in time. [Filing No. 37-1 at 7; Filing No. 43-2 at 12.] Additionally, the Geisler Farm has multiple residences on it, and different members of the Geisler family have lived in the various residences on the Geisler Farm at different points in time, irrespective of ownership. [Filing No. 37-1 at 7.]

For purposes of this Order, the relevant members of the Geisler family are Bernard and Debra Geisler and their three adult children Alva, Jennifer, and Jeffrey. [Filing No. 37-1; Filing No. 37-2.] Prior to July 1, 2019, Bernard and Debra lived in the primary residence on the Geisler Farm, and Alva lived in a different structure on the property. [Filing No. 43-1 at 3-4.] Beginning in 2002, Debra started experiencing health problems, including several brain aneurysms and

strokes, which necessitated multiple brain surgeries. [Filing No. 43-1 at 8-10.] Debra's health issues limit her mobility and ability to speak. [Filing No. 43-1 at 8-10.] During this time, Bernard was Debra's primary caretaker. [Filing No. 43-1 at 14.] At some point, the Geisler Farm was deeded to Alva from his parents but was subsequently transferred back to Debra and Bernard upon Bernard's request. [Filing No. 37-1 at 7.]

### B. The Grinnell Insurance Policy

On October 18, 2018, Bernard and Debra purchased an insurance policy from Grinnell ("the Policy"). [Filing No. 13-1.] The Policy provides in relevant part:

> **DEFINITIONS**
>
> * * * *
>
> 1. "You" and "your" mean:
>     a. The Named Insured shown in the Declarations and, if the Named Insured is an individual, the spouse if living in the same household;
>     b. Any Additional Named Insured shown in the Declarations and, if the Additional Named Insured is an individual, the spouse if living in the same household;
>
>     * * * *
>
>     c. "Your" legal representative if "you" die or are incapacitated, but only with respect to his or her function as a legal representative in controlling or managing "your" property. "Your" legal representative has all "your" rights and duties under this coverage;
>     d. A person having custody of "your" property after "your" death or after "you" have become incapacitated, but only if:
>         1) Liability arises out of the maintenance or use of the property; and
>         2) The person is authorized by law, "your" heirs, or "your" legal representative to have custody of the property;
> 2. "We", "us", and "our" mean the Company providing this liability insurance.
>
> * * * *

4. "Bodily injury" means bodily harm, sickness, or disease and includes resulting death.  "Bodily injury" also includes mental or physical anguish, pain, or suffering, but only if accompanied by physical symptoms of harm to the body of the person.  Infliction of emotional distress, loss of society, or loss of consortium suffered by a spouse, child, or parent is not a separate "bodily injury" under this policy and must be included in the claim of the person sustaining physical harm to the body.

\* \* \* \*

12. "Insured" means "you".  If "you" are an individual, "insured" also means:
    a. A person living with "you" and related to "you" by blood, marriage, or adoption . . . .

\* \* \* \*

13. "Insured premises" means:

    a. The farm premises which "you" own, rent, lease, or control as part of "your" farming operation and other locations "you" maintain as a "residence premises".  The "insured premises" does not include locations in "your" control for the purpose of performing "custom farming" operations;
    b. Any other premises acquired by "you" in the policy period which "you" intend to use as a "residence premises";
    c. Any part of premises which are not owned by an "insured" but where the "insured" may be temporarily residing or which an "insured" may occasionally rent for non-business purposes;
    d. Vacant land, other than farmland, owned by or rented to an "insured";
    e. Cemetery plots or burial vaults owned by an "insured";
    f. Any structures or grounds used by "you" in connection with "your" "residence premises"; or
    g. Land on which a one- to four-family residence is being built for "you", if the land is owned by or rented to "you".

\* \* \* \*

17. "Occurrence" means an accident, as perceived from the viewpoint of a reasonable person, causing unexpected "bodily injury" or "property damage" during the policy period. Continuous or repeated exposure to substantially the same harmful conditions, whether producing single or multiple instances of "bodily injury" or "property damage", constitutes a single "occurrence".

\* \* \* \*

20. "Property damage" means physical injury to or destruction of tangible property. "Property damage" does not include loss of use unless the property has been physically injured or destroyed.

\* \* \* \*

23. "Residence premises" means the one- to four-family dwelling where the first Named Insured or an Additional Named Insured lives, and which is shown in the Declarations, including the immediate grounds not used for "farming".

**PRINCIPAL COVERAGES**

Each Principal Coverage applies only if a limit of liability is shown in the Declarations.

**COVERAGE A – LIABILITY TO PUBLIC**

Subject to the limits shown in the Declarations for **COVERAGE A – LIABILITY TO PUBLIC** and the terms of this policy, "we" will pay compensatory damages for which any "insured" becomes legally liable as a result of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies. If suit is filed against any "insured" for legal damages covered under this policy, "we" will provide a defense using lawyers "we" choose. "We" may investigate and settle any claim or suit as "we" deem appropriate.

**"WE" WILL NOT DEFEND OR INDEMNIFY ANY "INSURED" IF "OUR" LIMIT OF LIABILITY HAS BEEN EXHAUSTED THROUGH PAYMENT OF A JUDGMENT OR SETTLEMENT, TENDER OF THE REMAINDER OF THE POLICY LIMIT TO THE CLERK OF COURT IN AN INTERPLEADER SUIT OR BY ORDER OF COURT, OR ANY COMBINATION OF THE ABOVE. NO LEGAL DEFENSE OR INDEMNIFICATION WILL BE FURNISHED TO ANY "INSURED" IF COVERAGE FOR THE "BODILY INJURY" OR "PROPERTY DAMAGE" DOES NOT EXIST UNDER THIS POLICY.**

\* \* \* \*

**GENERAL POLICY CONDITIONS**

\* \* \* \*

6. **Transfer Of Your Rights and Duties Under This Policy**
   Interest in this policy may not be transferred without "our" written consent. If the first named "insured" or additional "insured" shown in the Declarations or the spouse of the "insured" residing in the same household dies, the policy will cover:

   a. Any surviving member of the deceased's household who was covered under this policy at the time of death, but only while a resident of the "insured premises";
   b. The legal representative of the deceased person while acting within the scope of duties of a legal representative; and
   c. Any person having proper temporary custody of insured property until a legal representative is appointed.

\* \* \* \*

**SPECIAL PROVISIONS – INDIANA**

The sections of the policy listed below are amended as specified.

**DEFINITIONS**

Definition 1. "You" and "your" is replaced with the following:

1. "You" and "your" mean:
   a. The Named Insured shown in the Declarations and, if the Named Insured is an individual, the spouse if living in the same household; or
   b. Any Additional Named Insured shown in the Declarations

\* \* \* \*

Definition 12. "Insured" is replaced with the following:

12. "Insured" or "Insured Person" means:

    a. "You";

       1) If "you" are an individual, "insured" also means:

          a) A person living with "you" and related to "you" by blood, marriage, or adoption;

7

\* \* \* \*

### GENERAL POLICY CONDITIONS

Condition **6. Transfer Of Your Rights and Duties Under This Policy,** paragraph a. is amended as indicated:
   a. Any surviving member of the deceased's household who was covered under this policy at the time of death, but only while a resident of the "residence premises".

[Filing No. 13-1 at 2-54.]

### C. Debra's Move from the Geisler Farm

On July 1, 2019, Bernard suddenly passed away from a heart attack. [Filing No. 43-1 at 14.] After Bernard's death, Debra was unable to care for herself and moved away from the Geisler Farm. [Filing No. 43-2 at 3.] Debra currently resides with her daughter, Jennifer, who is her primary caregiver. [Filing No. 43-2 at 3.] Debra no longer has a driver's license and no longer has a key to the main house on the Geisler Farm. [Filing No. 37-2 at 9; Filing No. 43-1 at 11-13.] Since moving in with Jennifer, Debra has only returned to the Geisler Farm a handful of times because it is "hard for [her] to even go back up there since that's where [Bernard] passed away at." [Filing No. 37-2 at 6; Filing No. 37-2 at 11.]

### D. Alva's Move into the Primary Residence on the Geisler Farm

Following Bernard's death, Debra deeded the Geisler Farm to herself and her two other children, Jennifer and Jeffrey. [Filing No. 43-1 at 7; Filing No. 43-2 at 4.] Jennifer believes that Debra did this because she wants Jeffrey and Jennifer to receive the Geisler Farm upon her death. [Filing No. 43-2 at 4.] Since October 2019, however, Alva has resided in the main home on the Geisler Farm with his wife, Dawn, and his step-granddaughter. [Filing No. 37-1 at 6-7.] The structure that Alva previously resided in was subsequently torn down because "it was falling apart and full of mold." [Filing No. 43-2 at 5.]

8

While Alva takes care of much of the day-to-day maintenance on the Geisler Farm, he currently has no ownership interest in the property, pays no rent, and "has to ask before he really does anything other than come and go." [Filing No. 43-1 at 10-12; Filing No. 43-2 at 4-7.] Additionally, Debra continues to pay the property taxes and insurance on the Geisler Farm. [Filing No. 43-2 at 19-20.] Debra keeps various items on the Geisler Farm, including antiques that she and Bernard collected "throughout their years together," heirloom furniture, farming equipment, and her bed. [Filing No. 37-1 at 13; Filing No. 43-1 at 9-12; Filing No. 43-2 at 10-11.] However, Debra keeps no clothing at the Geisler Farm and does not have a bedroom there. [Filing No. 37-1 at 13; Filing No. 37-2 at 11.] Additionally, Debra no longer receives mail at the Geisler Farm. [Filing No. 43-1 at 11.] Both Alva and Jennifer maintain that Debra has not lived with Alva since moving from the property in July 2019 but agree that she still controls who lives there and would be able to move back into the house if she wanted to. [Filing No. 43-1 at 11-12; Filing No. 43-2 at 14-15

### E. The Incident

On March 25, 2020, Mr. Long and his daughter, H.L., were injured while at the Geisler Farm. ("the Incident"). Specifically, Alva invited several people, including Mr. Long and H.L., to the Geisler Farm for a "cook-out." [Filing No. 37-1 at 9-10.] Alva had not yet returned from work when Mr. Long and several others arrived. [Filing No. 37-1 at 11.] On the back deck of the property, the Geislers keep a 24 x 24-inch fire pit. [Filing No. 37-1 at 11.] At some point, Mr. Long started a fire in the fire pit, and when Alva arrived, Mr. Long "already had a little fire going." [Filing No. 37-1 at 11.] Alva then went to the other side of the yard to get some lights from a shed because they were going to "put up lights and play cornhole outside." [Filing No. 37-1 at 11.]

9

Earlier that day, Alva had been using a weed eater and a chain saw on the other side of the yard. [Filing No. 37-1 at 12.] Alva keeps a yellow gas can with 2:1 fuel (gasoline mixed with oil) to fuel his chain saw, which had not been put away prior to the guests' arrival. [Filing No. 37-1 at 12] The yellow gas can was not labeled to indicate its contents. [Filing No. 37-1 at 12.]

While Alva was getting lights from the shed, he heard Mr. Long say to the other guests that "he was going to make the fire go a little bit better." [Filing No. 37-1 at 11.] Alva assumed that this meant that Mr. Long was "going to get some little kindling and put [it] on [the fire.]" [Filing No. 37-1 at 11.] Instead, Mr. Long poured the contents of the yellow gas can onto the firepit. [Filing No. 37-1 at 12.]

Alva then heard a "loud boom," which "sounded like a bomb went off." [Filing No. 37-1 at 11-12.] The explosion caused Mr. Long to catch fire, and several other guests had to "put him out with a blanket." [Filing No. 37-1 at 12.] H.L. was also injured. [Filing No. 13 at 2; Filing No. 15 at 2.] While Alva did not directly witness the events leading up to the Incident, Mr. Long subsequently admitted to Alva what had happened. [Filing No. 37-1 at 12.] Alva described the Incident as "really upsetting" and stated that he does not "know what would possess someone to pour gasoline on a fire anyway." [Filing No. 37-1 at 11-12.]

### F. The Lawsuit

Both Mr. Long and H.L. (collectively, "the Longs") sustained injuries during the Incident. [Filing No. 43-2 at 9.] Subsequently, the Longs submitted a claim for damages against Debra and Alva under the Policy. [Filing No. 13 at 9.] Grinnell filed this case on July 29, 2021, seeking a declaration that: (1) there is no coverage under the Policy for "any liability for bodily injury, death, or punitive damages" that the Longs may have against Alva related to the Incident; (2) Grinnell has no duty to defend Alva in any lawsuits filed by the Longs for injuries or damages arising from

10

the Incident; and (3) Grinnell has no duty to indemnify Alva for any liability he may have for bodily injury, death, or punitive damages arising from the Incident.[1] [Filing No. 9; Filing No. 18.]

### III.
#### DISCUSSION

The primary issue in this case is whether Alva is entitled to coverage under the Policy. [*See* Filing No. 18.] Grinnell argues that he is not, and that it is entitled to summary judgment based on the plain language of the Policy. [Filing No. 37; Filing No. 38.] Specifically, Grinnell argues that under the language of the Policy, Debra and Bernard are the named insureds, and there are no other individuals listed as "additional named insured." [Filing No. 38 at 12.] At the time of the Incident, Grinnell argues, Debra was no longer living at the Geisler Farm and was, instead, living with Jennifer. [Filing No. 38 at 12.] While Indiana courts have not yet interpreted the term "living with" for purposes of an insurance policy, Grinnell argues that Indiana case law interpreting whether someone is a "resident" or "resides" with another person "weigh[s] fairly heavily against defining that [Debra] lived with Alva." [Filing No. 38 at 12.] Relying upon *Jones v. Western Reserve Group/Lightning Rod Mutual Insurance Co*., 699 N.E.2d 711 (Ind. Ct. App. 1998), Grinnell argues that Indiana courts consider the following factors: (1) whether the claimant maintained a physical presence in the named insured's home; (2) whether she possessed the subjective intent to reside there; and (3) the nature of her access to the named insured's home and its contents. [Filing No. 38 at 12.] Alternatively, Grinnell argues that the Indiana Court of Appeals in *Didion v. Auto Owners Insurance Co.*, 999 N.E.2d 108 (Ind. Ct. App. 2013), found that "reside" may be defined as "to be in residency; to occupy a fixed abode; or to dwell permanently or

---

[1] The Court notes that the Longs have filed a related case against Debra, Jennifer, Jeffrey, and Alva in Ripley County Circuit Court for claims arising from the Incident. *See Joseph M. Long v. Debra K. Geisler et al.*, Cause No. 69C01-2203-CT-000003.

continuously." [Filing No. 38 at 15.] Grinnell argues that whether this Court utilizes the factors identified in *Jones* or the general definition described in *Didion*, "Debra cannot properly be characterized as living with or residing with Alva" because she did not maintain a physical presence at the Geisler Farm after July of 2019, and there is no evidence of subjective intent to move back into the home. [Filing No. 38 at 16.] Grinnell further argues that Debra did not have access to the home or its contents. [Filing No. 38 at 16-17.]

The Longs respond that the "facts and language" of the Policy allow for a finding by a jury that Alva was a covered insured.[2] [Filing No. 43.] Specifically, the Longs argue that the Policy may provide coverage for Alva under General Policy Condition 6 ("the Transfer Provision") because, at the time of his death, Bernard and Alva "lived together as a family on the Geisler Farm" and "Alva is a surviving member of Bernard's household who has lived on the Geisler Farm." [Filing No. 43 at 10.] While the Longs acknowledge that the Policy provides that transfers must be in writing, they argue that "the plain language of [the Transfer Provision] states that the transfer 'upon death' of a named insured 'will cover' 'any surviving member of the decedent's household' upon" death and that "[a] person of average intelligence would not anticipate a written transfer to be required at death." [Filing No. 43 at 10.] Additionally, the Longs, relying upon *Erie Ins. Exch. v. Stephenson*, 674 N.E.2d 607, 610 (Ind. Ct. App. 1996), argue that Indiana law recognizes dual-

---

[2] As discussed above, Alva failed to respond to Grinnell's Motion for Summary Judgment. The Court notes that the failure to oppose summary judgment may result in a summary ruling in favor of the moving party. *See* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must ... identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *see also Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-286 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to abide by local rules). In this instance, the Court has determined that summary judgment is not appropriate for the reasons contained herein. Nevertheless, the Court advises Alva to familiarize himself with Local Rules of the Southern District of Indiana going forward.

residence and there is an "abundance of facts upon which a reasonable person could determine that Debra has maintained a dual residence, at Jennifer's and at her long-time family homestead" at the Geisler Farm. [Filing No. 42 at 13.] The Longs argue that the Policy "plainly recognizes the potential for an insured to maintain multiple 'insured premises' for which coverage would extend." [Filing No. 43 at 14.] Because the analysis of whether Debra was a "resident" of the Geisler Farm is a "complex, fact-heavy" inquiry, the Longs argue that it is a question that is "appropriately left to a jury" and, therefore, summary judgment should be denied. [Filing No. 43 at 18.]

Grinnell replies that the Longs "have responded with a convoluted interpretation of the policy language that ignores key policy provisions and fails to examine the policy as a whole." [Filing No. 44 at 1.] Regarding the Transfer Provision, Grinnell argues that "the plain language of the policy states that a transfer only occurs if Grinnell provides written consent of the transfer," and absent such consent, there can be no transfer of the Policy. [Filing No. 44 at 4.] Further, Grinnell replies that while Indiana law gives "resident" a broad meaning, the "interpretation is 'limited to the reasonable interpretation of the term as used.'" [Filing No. 44 at 5 (citing *Aetna Casualty and Surety Company v. Crafton*, 551 N.E.2d 893, 895 (Ind. Ct. App. 1990)).] Because Debra and Alva "lived under separate roofs at all relevant times," Debra has subsequently moved off of the property, Alva "did not move into the main residence on the property until approximately three and one half months after Debra moved out," and she has "rarely visited [the Geisler Farm] over the last 33 months," Grinnell argues that it would be an "unreasonable interpretation of the term to claim that she was somehow a 'resident' of the home where Alva lived at the time" of the Incident. [Filing No. 44 at 10-11.] Accordingly, Grinnell argues that the Court should grant summary judgment in its favor. [Filing No. 44 at 11.]

When the Court exercises diversity jurisdiction over an action, it is "obliged to apply state law to the substantive issues in the case." *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (citing *Erie RR. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The parties do not dispute that Indiana law governs this action. Under Indiana law, the "proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment." *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 243 (Ind. 2000); *see also Nat'l Fire & Cas. Co. v. W. By & Through Norris*, 107 F.3d 531, 535 (7th Cir. 1997). "Generally, in Indiana, contracts for insurance are subject to the same rules of interpretation as are other contracts." *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985).

Ambiguity exists when a provision in a policy is subject to more than one interpretation, and reasonable people could differ regarding its meaning. *Briles v. Wausau Ins. Cos.*, 858 N.E.2d 208, 213 (Ind. Ct. App. 2006). If the language in a policy is unambiguous, then the language is given its plain and ordinary meaning. *Id.* The simple fact that a term is undefined does not necessarily make the term ambiguous, nor is ambiguity "affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party." *Haag v. Castro*, 959 N.E.2d 819, 821–22 (Ind. 2012) (internal citations and quotations omitted). Under Indiana law, "ambiguities in insurance policies are generally construed against the policy drafter, and an interpretation yielding coverage is favored. However, if no ambiguity exists, the policy will not be interpreted to provide greater coverage than the parties bargained for themselves" and "policies will not be given an unreasonable interpretation in order to provide added coverage." *Alexander v. Erie Ins. Exch.*, 982 F.2d 1153, 1157 (7th Cir. 1993).

### A. Coverage Pursuant to the Transfer Provision upon Bernard Geisler's Death

As their initial response to Grinnell's assertion that no coverage exists, the Longs argue that the Policy's Transfer Provision establishes that Alva was entitled to coverage. [Filing No. 43 at 10.] The Transfer Provision, in relevant part, provides that:

> Interest in this policy may not be transferred without "our" written consent. If the first named "insured" or additional "insured" shown in the Declarations or the spouse of the "insured" residing in the same household dies, the policy will cover:
> a. Any surviving member of the deceased's household who was covered under this policy at the time of death, but only while a resident of the "residence premises."

[Filing No. 13-1 at 37.] Residence premises is defined as "the one to four family dwelling where the Named Insured or an Additional Named Insured lives, and which is shown in the Declaration, including the immediate grounds not used for 'farming.'" [Filing No. 13-1 at 26.]

The Longs argue that the Transfer Provision's language that the Policy "will" cover any surviving member of the deceased's household utilizes mandatory language and, therefore, creates ambiguity as to whether written consent is required at death. [Filing No. 43 at 10.] However, as the Indiana Supreme Court has "long recognized, '[a]n insurance policy is a contract like any other.'" *G&G Oil Co. of Indiana v. Cont'l W. Ins. Co.*, 165 N.E.3d 82, 87 (Ind. 2021) (citing *Justice v. American Family Mut. Ins. Co.*, 4 N.E.3d 1171, 1175 (Ind. 2014)). Indiana courts have instructed that a contract should be interpreted "by reading the contract as a whole" and construed "so as to not render any words, phrases, or terms ineffective or meaningless." *Vincennes Univ. ex rel. Bd. of Trustees of Vincennes v. Sparks*, 988 N.E.2d 1160, 1165 (Ind. Ct. App. 2013) (citing *DLZ Indiana, LLC v. Greene Cnty.*, 902 N.E.2d 323, 327 (Ind. Ct. App. 2009)).

While the Longs attempt to assert ambiguity, their interpretation of the Transfer Provision is not reasonable because if transfer occurs automatically upon the death of an insured, the Policy's written consent requirement would effectively be meaningless. Therefore, the Court finds that the

15

plain language of the Transfer Provision explicitly requires Grinnell's written consent to transfer the Policy and is not ambiguous. [*See* Filing No. 13-1 at 37.] The parties do not dispute that no such written consent occurred. [Filing No. 43; Filing No. 44.] "And where an insurer crafts a policy using clear and unambiguous language that comports with public objectives expressed in state statute, we apply that plain language, even if the result is to limit the insurer's liability." *Am. Econ. Ins. Co. v. Motorists Mut. Ins. Co.*, 605 N.E.2d 162, 164 (Ind. 1992).

Accordingly, the Court declines to find that the Transfer Provision is ambiguous as to whether Alva was covered upon Bernard's death. Therefore, the Court rejects this argument as a basis to preclude summary judgment. *See Haag v. Castro*, 959 N.E.2d 819, 824 (Ind. 2012) ("An insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability.")

### B. Coverage Pursuant to Debra's Dual Residency

The Court turns to the Long's remaining argument in support of a finding of coverage – that Debra maintained dual residences both with Alva on the Geisler Farm and with Jennifer elsewhere, and therefore, Alva was an Insured under the Policy as a person "living with" Debra and related to her "by blood." [Filing No. 43 at 13 (citing Filing No. 38 at 15).] The parties agree that the term "living with" has not yet been defined in the insurance context under Indiana law, but that the Indiana Court of Appeals' guidance regarding whether someone is a "resident" or "resides with" another person lends the applicable analysis for interpreting this term of the Policy. [*See* Filing No. 38; Filing No. 43; Filing No. 44.] Where the parties disagree is the outcome of the analysis as it applies to the facts at hand. [*See* Filing No. 38; Filing No. 43; Filing No. 44.]

Under Indiana law, the term "resident" does not have a precise or fixed meaning. *Jones v. W. Reserve Grp.*, 699 N.E.2d 711, 714 (Ind. Ct. App. 1998); *Allstate Ins. Co. v. Neumann*, 435

N.E.2d 591, 593 (Ind. Ct. App. 1982). The Indiana Court of Appeals has advised that "[i]t is an amorphous term that . . . has as many colors as Joseph's coat." *Jones*, 699 N.E.2d at 714 (internal quotation omitted). However, the term is more expansive than just a person's home or fixed residence. *Id.* at 716.

Indiana courts consider the following factors when determining residency in an insurance context: (1) whether the [person] maintained a physical presence in the insured's home; (2) whether the [person] had the subjective intent to reside there; and (3) the nature of the [person's] access to the insured's home and its contents. *Secura Supreme Ins. Co. v. Johnson*, 51 N.E.3d 356, 360 (Ind. Ct. App. 2016). Indiana courts do not necessarily require people to live under the same roof to be a part of the same household. *Id.* (citing *Erie Ins. Exchange v. Stephenson*, 674 N.E.2d 607, 610 (Ind.Ct.App.1996)). And under Indiana law, "it is possible to maintain two households or to live as a member of one household and still be the 'domestic head' of a separate household." *Id.* Accordingly, the factfinder must also consider all evidence that is indicative of the claimant's living habits. *Jones*, 699 N.E.2d at 714.

Here, the undisputed evidence does not establish as a matter of law whether Alva falls within the definition of an Insured because a question of fact exists whether Alva was "living with" Debra at the time of the Incident. This leaves the Court unable to resolve whether Alva is entitled to coverage under the Policy without the aid of a factual determination. The factfinder could reasonably determine that Alva does not live with Debra based on the facts that Debra had moved from the Geisler Farm and rarely returns, that she no longer has a key to the residence where Alva resides, and that she no longer receives her mail there. [Filing No. 37-2 at 6-9; Filing No. 43-1 at 11-13.] If the factfinder were to make this determination, Alva would not meet the definition of an Insured entitled to coverage under the Policy. [*See* Filing No. 13-1 at 25; Filing No. 13-1 at

17

47.] Alternatively, the factfinder could interpret Debra's failure to return to the Geisler Farm as being attributable to grief following Bernard's death and to her limited mobility due to her declining health but that she, nevertheless, maintains a residence at the Geisler Farm as evidenced by her continued control over the property, payment of property taxes and insurance, and storage of personal possessions on the property. [Filing No. 37-1 at 13; Filing No. 43-1 at 9-12; Filing No. 43-2 at 10-11.] If the factfinder were to determine that Alva does live with Debra, Alva would meet the definition of an Insured entitled to coverage under the Policy. [Filing No. 13-1 at 25; Filing No. 13-1 at 47.] The Court takes no position regarding the evidentiary value of the undisputed evidence, except to say that the evidence is not so one-sided that one party must prevail as a matter of law.

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Here, the Court finds that Grinnell's failure to define the term "lives with" under the Policy combined with Indiana's common-law treatment of residency permit conflicting reasonable inferences from the evidence regarding whether Alva lived with Debra at the time of the Incident. This factual dispute is properly left to the factfinder and cannot be resolved by the Court on summary judgment. *O'Leary*, 657 F.3d at 630. Therefore, Grinnell's Motion for Summary Judgment, [Filing No. 37], is **DENIED**.

## IV.
### CONCLUSION

For the preceding reasons, the Court **DENIES** Grinnell's Motion for Summary Judgment, [37.]

Date: 7/7/2022

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**

**Distribution via U.S. mail to:**

ALVA GEISLER
10272 South County Line Road 275
Madison, IN 47250